1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNIE PARK,

                    Plaintiff,

        v.

STATE FARM FIRE AND
CASUALTY COMPANY et al.,

                    Defendant.

CASE NO. 2:23-cv-01564-TL

ORDER ON MOTION TO COMPEL
AND MOTION FOR PROTECTIVE
ORDER

        This matter comes before the Court on Plaintiff Annie Park's First Motion to Compel

Discovery (Dkt. No. 25) and Defendant State Farm's Motion for Protective Order (Dkt No. 41).

Having reviewed the motions, responses, and the relevant record, the Court GRANTS Plaintiff's

motion (Dkt. No 25) and DENIES Defendant's motion (Dkt. No. 41).

## I.    BACKGROUND

        This is a bad-faith insurance claim. *See generally* Dkt. No. 1-1. Plaintiff owns a

residential rental property located in Lacey, Washington, that was insured by Defendant under a

rental dwelling policy. *Id.* ¶ 7. Plaintiff alleges that, after the property sustained damage and she

filed a claim, Defendant mishandled the claim, resulting in the denial of coverage and insurance

benefits. *Id.* ¶¶ 13–37. Plaintiff alleges that Defendant breached their insurance contract,

including the implied covenant of good faith and fair dealing, as well as numerous provisions of Washington state law. *Id.* ¶¶ 38–70.

**A.    Plaintiff's Requests for Discovery and Defendant's Responses**

On December 27, 2023, Plaintiff propounded her first discovery requests, comprising four interrogatories and 14 requests for production. Dkt. No. 25-6. On February 5, 2024, Defendant served its responses. Dkt. No. 25-7. On April 5, 2024, Plaintiff sent Defendant a written "request for supplementation," advising Defendant that its responses were insufficient, and asking to schedule a conference to discuss the matter. Dkt. No. 25-8 at 1. Plaintiff enumerated insufficiencies in eight of Defendant's responses to her requests for production and asked that Defendant "fully" supplement its responses by May 3, 2024. *Id.* at 1–6. Plaintiff noted further that Defendant had "indicated that it would produce discoverable material subject to the entry of a stipulated protective order," but added that Defendant had not offered any proposed protective order for Plaintiff to review. *Id.* at 1. Plaintiff indicated her willingness to stipulate to the Western District of Washington's Model Protective Order "without modification" and attached the Model Protective Order to the letter. *Id.* at 1, 8–16. Along with the request for supplementation, Plaintiff concurrently propounded her second discovery requests, consisting of four interrogatories, three requests for production, and requests for admission. Dkt. No. 25-10.

On April 10, 2024, Plaintiff and Defendant held a conference to discuss the issues raised in Plaintiff's request for supplementation. Dkt. No. 25-9 at 1–2. In an email Plaintiff sent to Defendant on April 11, 2024, that purported to summarize the conference, Plaintiff advised Defendant that "Plaintiff is willing to stipulate to the Western District's model protective order, but you believed that [Defendant] would want to use their own. You will get back to us with the proposed order for our review, by the end of next week at the latest." *Id.* at 1. On May 23, 2024, Defendant served Plaintiff with supplemental responses to Plaintiff's first discovery requests and

initial responses to Plaintiff's second discovery requests. Dkt. Nos. 25-11, 25-12. Then, on June 6, 2024, Plaintiff propounded an "amended" version of its first discovery requests. Dkt. No. 25-13. On July 12, 2024, Defendant served its responses to the amended first requests. Dkt. No. 31-3.

In a parallel email exchange during the first week of June 2024, the parties also discussed a proposed protective order. *See generally* Dkt. No. 40-1. On June 4, 2024, Defendant emailed Plaintiff a proposed protective order. *Id.* at 4. But on June 6, 2024, Plaintiff rejected Defendant's proposal as "one-sided and [in] favor [of] the Defendant." *Id.* at 3. Plaintiff expressed her position that the Western District's model order was "sufficient" and needed no modification. *Id.* The next day, on June 7, 2024, Plaintiff emailed Defendant and "reiterate[d]" her willingness to stipulate to the Western District of Washington's Model Protective Order. *Id.* at 2.

On July 8, 2024, Defendant emailed Plaintiff and asserted that it was "finalizing" its responses to Plaintiff's amended requests for discovery; the email did not mention a protective order. *Id.* On July 9, 2024, Plaintiff emailed Defendant to inquire about the protective order. *Id.* at 1. Defendant responded the same day, advising Plaintiff that it was "still working on this" and "should have word to you shortly." *Id.* On July 12, 2024, Defendant served Plaintiff with its responses to Plaintiff's amended discovery requests. Dkt. No. 26.

All told, Plaintiff served Defendant with three requests for discovery—

      (1)     Plaintiff's first requests, dated December 23, 2023 (Dkt. No. 25-6);

      (2)     Plaintiff's second requests, dated April 5, 2024 (Dkt. No. 25-10); and

      (3)     Plaintiff's amended first requests, dated December 23, 2023[1] (Dkt. No. 25-13).

Defendant served Plaintiff with four sets of responses—

---

[1] Upon amending its first requests for discovery, Plaintiff did not re-date the document.

(1)   Defendant's first responses, dated February 5, 2024 (Dkt. No. 25-7);

(2)   Defendant's supplemental first responses, dated May 23, 2024 (Dkt. No. 25-11);

(3)   Defendant's second responses, dated May 23, 2024 (Dkt. No. 25-12); and

(4)   Defendant's first amended responses, dated July 12, 2024 (Dkt. No. 31-3).

**B.   Plaintiff's Motion to Compel**

On August 23, 2024, Plaintiff filed the instant motion to compel. Dkt. No. 25. Plaintiff asserted therein that she was seeking the Court's intervention with respect to 10 requests for production and one interrogatory. *Id.* at 5–6. Specifically, Plaintiff described her unresolved requests as follows:

Plaintiff's First Interrogatories and Requests for Production:

- Request for Production No. 2 (application files);

- Request for Production No. 4 (underwriting files);

- Request for Production No. 5 (property claim handling policies);

- Request for Production No. 6 (vandalism and drug contamination policies);

- Request for Production No. 7 (reserves set for Plaintiff's claim);

- Request for Production No. 9 (personnel files for claim handlers);

- Request for Production No. 10 (Defendant's bonus/incentive programs);

- Request for Production No. 11 (claims audit policies);

Plaintiff's Second Interrogatories and Requests for Production:

- Interrogatory No. 1 & Request for Production No. 3 (regarding evaluation of loss of rents); and

- Request for Production No. 1 (documents related to "hard living").

*Id.* Plaintiff also requested that the Court award attorney fees, pending the Court's presumptive granting of her motion. *Id.* at 15.

On September 4, 2024, Defendant responded to Plaintiff's motion. Dkt. No. 30. Defendant stylized its response as a "Response to Plaintiff's Motion to Compel Discovery and Cross Motion for Protective Order." *Id.* at 1. Defendant's response: (1) recounted generally the discovery timeline recited above; (2) addressed five of the substantive discovery issues raised by Plaintiff in her motion to compel; (3) argued against a potential award of attorney fees; and (4) discussed at length a proposed protective order. *See generally id.* Defendant asserted that it "was in the process of providing Plaintiff with an alternative proposed Protective Order . . . because the Western District's Model does not contemplate document production specific to this insurance-related litigation." *Id.* at 4. Defendant also stated that it "has provided Plaintiff with its new proposed Protective Order and advised that the non-contested documents wait in the wings." *Id.* Defendant also filed what purported to be a proposed protective order with the Court. Dkt. No. 31-4.

On September 13, 2024, Plaintiff replied to Defendant's response. Dkt. No. 40. In addition to addressing the substantive discovery issues in her pending motion to compel, Plaintiff asserted that Defendant's "Cross Motion for Protective Order" was improper, arguing that "there is no such thing as a 'cross-motion' that complies with this Court's rules." *Id.* at 4. Plaintiff urged the Court to deny Defendant's "cross-motion." *Id.*

Finally, as a coda, on September 16, 2024, Defendant filed a Motion for Protective Order. Dkt. No. 41. Defendant admits that this motion substantially draws from its response to Plaintiff's motion to compel—*i.e.*, the "cross-motion" (Dkt. No. 30)—and concedes that certain portions are, in fact, "identical." *See* Dkt. No. 41 at 2. In the proposed order attached to the

1    motion, Defendant advises that the protective order contemplated in the motion is the document

2    filed at Docket No. 31-4, which had also accompanied the "cross-motion." *Id.* at 9.

3           On September 27, 2024, Plaintiff filed her response to Defendant's motion for a

4    protective order. Dkt. No. 43. This response was untimely. Under Local Civil Rule 7(d)(2),

5    Plaintiff's response was due nine days after Defendant filed its motion. LCR 7(d)(2). As

6    Defendant filed its motion on September 16, 2024, Plaintiff had until September 25, 2024, to

7    respond. Plaintiff's response was thus two days late. On October 1, 2024, Defendant filed a

8    reply, pointing out that Plaintiff filed her response late without having filed a motion requesting

9    an extension. Dkt. No. 45 at 2. But ironically, Defendant's reply was also untimely and also filed

10    without a motion requesting an extension. After filing its motion, Defendant had 14 days—or

11    until September 30, 2024—to file a reply. LCR 7(d)(2). Defendant asserts that Plaintiff's late

12    filing resulted in its having less than 48 hours to reply, *id.*, but the proper course of action if

13    Defendant needed more time would have been to seek a stipulation from Plaintiff and/or file a

14    motion with the Court seeking an extension of time (the very failure for which it criticized

15    Plaintiff)—not take it upon itself to grant an extension. As both filings were late, the Court will

16    consider them this time. However, the Court cautions all counsel that any future late filings may

17    be stricken. *See Reule v. H.O. Seiffert Co.*, No. C08-1591, 2009 WL 10725375, at *1 (W.D.

18    Wash. May 11, 2009) (citing *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979)) ("The

19    Court has the discretion to strike untimely pleadings that fail to comply with local rules.").

20    Extensions of time must be sought in compliance with the federal rules, local rules, and this

21    Court's Standing Order for Civil Cases.

22           The Court thus has two issues presently before it. First, the Court must adjudicate

23    Plaintiff's motion to compel (Dkt. No. 25). Second, the Court must address the conflict over the

24    dueling protective orders. The Court notes that neither side is opposed to the issuance of a

protective order. Rather, the issue concerns which proposed order—*i.e.*, the Western District's

Model Protective Order, as advocated by Plaintiff; or Defendant's *sui generis* protective order—

will be used.

## II.   LEGAL STANDARD

### A.   Motion to Compel

Federal Rule of Civil Procedure 26 allows parties to obtain discovery regarding:

> any nonprivileged matter that is relevant to any party's claim or
> defense and proportional to the needs of the case, considering the
> importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the
> parties' resources, the importance of the discovery in resolving the
> issues, and whether the burden or expense of the proposed
> discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Relevant" information is that which is "reasonably calculated to lead to

the discovery of admissible evidence." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465,

1470 (9th Cir. 1992). "[B]road discretion is vested in the trial court to permit or deny discovery."

*Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Under Federal Rule of Civil Procedure 37, "a party seeking discovery may move for an

order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

The court may order a party to provide further responses to an "evasive or incomplete disclosure,

answer, or response." Fed. R. Civ. P. 37(a)(4). The party seeking to compel discovery has the

burden of establishing that its requests are relevant. Fed. R. Civ. P. 26(b)(1). However, once this

showing is made, the party seeking to deny discovery must "carry a heavy burden of showing

why discovery" should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.

1975). In responding to a motion to compel discovery, "the party who resists discovery has the

burden to show that discovery should not be allowed, and has the burden of clarifying,

explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283

(C.D. Cal. 1998). "[O]bjections that were raised in response to a particular discovery request but not raised in briefing on a discovery motion are . . . waived." *O.L. v. City of El Monte*, No. C20-797, 2021 WL 926105, at *3 (C.D. Cal. Jan. 11, 2021); *see Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999) ("When ruling upon a motion to compel, the court generally . . . deems objections initially raised but not relied upon in response to the motion as abandoned.").

**B.      Protective Order**

A district court has broad discretion to control discovery. *Hallett*, 296 F.3d at 751. Pursuant to Federal Rule of Civil Procedure 26(c), "[a] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding discovery or specifying terms, including the time and place, for discovery. Fed. R. Civ. P. 26(c)(1). "A party seeking a protective order under Rule 26 bears the burden of demonstrating good cause required to support such an order." *Great West Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 496 (E.D. Pa. 1994) (internal quotation marks and citations removed). Further, "[i]t is the moving party's burden to show a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule." *Id.* (internal quotation marks and citations removed).

### III.      DISCUSSION

As an initial matter, the Court advises the Parties that the Court expended substantial judicial resources in ruling on the motion to compel. Plaintiff's motion and Defendant's response both provided minimal case law and on-point authority regarding the specific discovery requests at issue. Consequently, the Court substantially relied upon its own research to reach its conclusions here. Future pleadings that simply rely on counsels' assertions and do not provide authority may be stricken or denied as deficient.

**A.     Uncontested Discovery Issues**

Defendant's response (Dkt. No. 30) to Plaintiff's motion to compel (Dkt. No. 25) only addresses five of the eleven discovery issues raised in the motion. Accordingly, the Court considers Defendant to have waived those objections that it originally lodged in its discovery responses yet failed to raise in its briefing here. *See City of El Monte*, 2021 WL 926105, at *3. Consequently, the Court deems the following discovery issues deriving from Plaintiff's first discovery requests and first amended discovery requests to be uncontested:

- Request for Production No. 5 (property claim handling policies);
- Request for Production No. 6 (vandalism and drug contamination policies);
- Request for Production No. 9 (personnel files for claim handlers); and
- Request for Production No. 11 (claims audit policies).

*See* Dkt. No. 25 at 5–6. And the Court deems the following discovery issues deriving from Plaintiff's second discovery requests to be uncontested:

- Interrogatory No. 1 (regarding evaluation of loss of rents); and
- Request for Production No. 3 (regarding evaluation of loss of rents).

*See id.* The Court will address these uncontested issues in turn, as they are relevant to Plaintiff's request for attorneys' fees.

**1.     Request for Production Nos. 5 and 6**

Request for Production No. 5, as amended, seeks "[a]ll Washington homeowners' property loss claims handling policies, procedures, standards, and guidelines that relate in any way to the process of handling of the Claim during the period of January 1, 2020, through December 31, 2022." Dkt. No. 25-13 at 9 (italics removed). Request for Production No. 6 seeks "[a]ll vandalism and drug contamination damage claims policies, procedures, standards and guidelines . . . that relate in any way to the processing or handling of the Claim." *Id.* Plaintiff

1    asserts that these requests are relevant because they seek "documents that reflect claims

2    handling, which is directly at issue in Plaintiff's case." Dkt. No. 25 at 7.

3              An insurer's policies regarding claim handling are discoverable in bad-faith insurance

4    cases. *See, e.g.*, *Vandevert Constr. v. Allied World Specialty Ins. Co.*, No. C21-197, 2022 WL

5    18781103, at *5 (E.D. Wash. Feb. 14, 2022) (ordering defendant to produce "any and all claims

6    manuals, memoranda, directives, letters, or other forms of written or computerized

7    communications that were in effect at the time the claim in this case was evaluated and denied

8    and which governed the handling and determination of the claim at issue in this case," as well as

9    same regarding "claim settlement policies"); *Int'l Game Tech. v. Ill. Nat'l Ins. Co.*, No. C16-

10   2792, 2017 WL 5505039, at *4 (D. Nev. Nov. 16, 2017) ("Claims manuals and claims handling

11   information are relevant in breach of contract cases."); *Zewdu v. Citigroup Long Term Disability*

12   *Plan*, 264 F.R.D. 622, 628 (N.D. Cal. 2010) (finding relevant a party's request for "claims

13   manuals and procedures and other documents used by [insurer] in processing [insured's] claim").

14   With respect to Plaintiff's request for claim-handling materials, the Court sees no reason (and

15   Defendant has not provided one) to deviate from the example in *Vandevert*. As to Plaintiff's

16   request for policies concerning vandalism and drug contamination, the Court finds it only logical

17   that if an insurer's *general* claims-handling policies are relevant and discoverable in a bad-faith

18   claim, as the court found in *Vandevert*, then *specific* policies that concern the specific

19   circumstances of Plaintiff's claim—*i.e.*, alleged vandalism and drug contamination—would also

20   necessarily be relevant and discoverable here.

21             Therefore, the Court GRANTS Plaintiff's motion to compel with respect to Request for

22   Production Nos. 5 and 6. The Court ORDERS Defendant to produce documents responsive to

23   Request for Production Nos. 5, as amended; and 6, consistent with Plaintiff's instructions and

24   definitions. *See* Dkt. No. 25-13 at 1–6, 9.

1

2.      **Request for Production No. 9**

2

Request for Production No. 9 seeks "The personnel files for the claims handlers who

3

worked on the Claim . . . including but not limited to the personnel files of Tyler Green and

4

Darryl Watson." Dkt. No. 25-13 at 10. The request notes that certain personal information can be

5

redacted. *Id.* Plaintiff argues that information in Defendants' employees' personnel files "will

6

provide critical information regarding the training, qualifications, and performance of the

7

employees who managed Plaintiff's claim." Dkt. No. 25 at 9. Plaintiff asserts that the personnel

8

files could reveal "that the employees involved [in Plaintiff's claim] may not have conducted a

9

reasonable investigation into Plaintiff's case or have not done so in the past." *Id.* They might also

10

demonstrate "a pattern of repeated mishandling of claims, failure to follow standard procedures,

11

and/or systemic issues within [Defendant's] claims handling process." *Id.*

12

"[M]any court[s] have found insureds are entitled to discovery on whether claims

13

personnel had improper incentives, financial or otherwise, to deny a claim." *Lieberman v. Unum*

14

*Grp.*, No. C20-1798, 2021 WL 4807643, at *7 (C.D. Cal. Oct. 14, 2021). Thus, the type of

15

material sought here by Plaintiff has "routinely been found to be relevant and discoverable in bad

16

faith actions." *Pac. Coast Surgical Ctr., LP v. Scottsdale Ins. Co.*, No. C18-3904, 2019 WL

17

1199024 (C.D. Cal. Mar. 11, 2019) (internal quotation marks and citation omitted); *see also*

18

*Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 512 (D.S.D. 2015) (establishing as a "basic

19

premise" that "personnel files in bad faith actions [are] relevant and discoverable"). "Personnel

20

files may reveal an inappropriate reason or reasons for defendant's action with respect to

21

plaintiff's claim or an improper corporate culture." *Am. Auto Ins. Co. v. Haw. Nut & Bolt, Inc.*,

22

No C15-245, 2017 WL 80248 (D. Haw. Jan. 9, 2017) (internal quotation marks and citations

23

omitted); *see Yancey v. Hartford Ins. Co.*, No. C12I-1198, 2013 WL 12142640, at *2 (C.D. Cal.

24

May 23, 2013) (finding that plaintiff was entitled to know whether personnel involved in

1   terminating her claim were rewarded or punished based on their "batting averages"). Thus, while

2   the Court is cognizant of the privacy interest asserted by Defendant, in a bad-faith insurance

3   claim such as this one, the Court must acknowledge that "the potential probative value of the

4   information contained in those records outweigh[s] any privacy concerns" of the subjects of

5   those records. *See Ingram v. Great Am. Ins. Co.*, 112 F. Supp. 3d 934, 940 (D. Ariz. 2015).

6       Therefore, the Court GRANTS Plaintiff's motion to compel with respect to Request for

7   Production No. 9. The Court ORDERS Defendant to produce documents responsive to Request for

8   Production No. 9, regarding training, qualifications, or performance, consistent with Plaintiff's

9   instructions and definitions. *See* Dkt. No. 25-13 at 1–6, 10.

10       **3.**    **Request for Production No. 11**

11       Request for Production No. 11, as amended, seeks:

12           General policies and procedures for conducting claims audits
            related to homeowners [*sic*] property damage claims, as well as all
13           documents regarding any claims audits conducted on the Claim
            File . . . and all claims audits conducted in the years 2018 through
14           Current Date on any claim files handled by Tyler Green and Darryl
            Watson.

15

16   Dkt. No. 25-13 at 10 (italics removed). Plaintiff asserts that "[Defendant]'s audit policies could

17   lead to relevant and admissible evidence indicating a pattern of compliance, or lack of

18   compliance, with Washington state law." Dkt. No. 25 at 10.

19       "Policies and procedures for conducting audit or file reviews . . . appear generally

20   relevant" in a bad-faith insurance claim. *McCall v. State Farm Mut. Auto. Ins. Co.*, No. C16-

21   1058, 2017 WL 3174914, at *16 (D. Nev. July 26, 2017). Here, given Plaintiff's allegations that

22   Defendant's actions ran afoul of state law (Dkt. No. 1-1 ¶ 36), the Court finds that Defendant's

23   policies regarding the investigation and detection—*i.e.*, auditing—of potential noncompliance

24   with state law is relevant here. *See* "audit," *Black's Law Dictionary* (12th ed. 2024).

Therefore, the Court GRANTS Plaintiff's motion with respect to Request for Production No. 11, as amended. The Court ORDERS Defendant to produce documents responsive to Request for Production No. 11, as amended, consistent with Plaintiff's instructions and definitions. *See* Dkt. No. 25-13 at 1–6, 10.

4.    **Interrogatory No. 1 and Request for Production No. 3 (from Plaintiff's Second Request for Discovery)**

Interrogatory No. 1, from Plaintiff's second requests for discovery, asks, "What facts and sources of information are used to determine the fair market value of a rental property for purposes of evaluating damages related to loss of rents?" Dkt. No. 25-10 at 6. Request for Production No. 3, from Plaintiff's second requests for discovery, seeks "all documents, communications, records[,] directives, memorandums, training manuals, and policies relating in any way to evaluation of loss of rents." *Id.* at 8.

The Court finds that discovery related to "loss of rents" is relevant and discoverable here. Defendant's Answer (Dkt. No. 11) included as an attachment a letter from Defendant to Plaintiff, which asserted that, "If a Loss Insured causes that part of the **residential premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value." Dkt. No. 11-1 at 3 (boldface in original). This language places loss of rents under the umbrella of coverage for which Plaintiff believed she had contracted with Defendant in her Rental Dwelling Policy, and therefore included within the damages Plaintiff allegedly sustained when Defendant allegedly breached its contract with her. *See* Dkt. No. 1-1 ¶¶ 7, 26. Just as Defendant's specific policies and materials regarding the specific type of loss at issue in this case are relevant here, so too are Defendant's specific policies and materials regarding the specific type of damages at issue in this case. *Cf.* Section III.A.1 *supra*.

1   Therefore, the Court GRANTS Plaintiff's motion to compel with respect to Interrogatory

2   No. 1 and Request for Production No. 3. The Court ORDERS Defendant to respond to

3   Interrogatory No. 1; and to produce documents responsive to Request for Production No. 3,

4   consistent with Plaintiff's instructions and definitions. *See* Dkt. No. 25-10 at 1–6, 8.

5   **B.      Contested Discovery Issues**

6   As to the requests to which Defendant has offered objections, these include Request for

7   Production Nos. 2, 4, 7, and 10, from Plaintiff's first requests for discovery; and Request for

8   Production No. 1, from Plaintiff's second requests for discovery. The Court addresses these in

9   turn.

10   **1.      Request for Production Nos. 2 and 4**

11   Request for Production No. 2 seeks a "true, complete, Bates numbered and correct

12   version of the application files for the Policy." Dkt. No. 25-13 at 8. Request for Production No. 4

13   seeks "The Complete Underwriting File . . . referring or relating in any way to the Policy at issue

14   in this case." *Id.* Plaintiff's motion to compel asserts that the files sought in Request for

15   Production Nos. 2 and 4 "are relevant and helpful in determining the extent to which the

16   underwriting of the policy adequately considered the risks associated with insuring Plaintiff's

17   property." Dkt. No. 25 at 6. Defendant's response argues that that these materials are "useless"

18   here because they were "generated . . . in 2015 and predate any of the events that could give rise

19   to this lawsuit." Dkt. No. 30 at 11. Defendant further objects that "this request is propounded

20   only for the purpose of causing annoyance, harassment, and burdening State Farm with undue

21   expense." *Id.*

22   Courts in this circuit have found claim-application and underwriting materials relevant

23   and discoverable in bad-faith insurance claims. *See, e.g.*, *Riverport Ins. Co. v. State Farm Fire &*

24   *Cas. Co.*, No. C18-330, 2018 WL 6435883, at *2 (D. Nev. Dec. 6, 2018) ("Courts have found

that underwriting files are discoverable in cases involving breach of contract."); *Renfrow v. Redwood Fire & Cas. Ins.*, 288 F.R.D. 514, 521 (D. Nev. 2013) (finding documents "that were produced as a result of, or related to, any of [plaintiff]'s applications for insurance with [d]efendants" relevant to plaintiff's claims for breach of contract and bad faith) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Further, the age of the underwriting materials does not bear on their relevance here. *See Silgan Containers v. Nat'l Union Fire Ins.*, No. C09-5971, 2011 WL 2198141, at *1 (N.D. Cal. June 6, 2011) (rejecting insurer's attempt to limit relevant time period for discoverable underwriting files). And it is reasonable to consider that, as litigation over the performance of Plaintiff's insurance contract with Defendant proceeds here, it might become necessary to "examin[e] applicable extrinsic evidence" pertaining to the creation of the insurance contract to resolve potential ambiguities in the contract itself. *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 665–66, 15 P.3d 115 (2000) (citing *Am. Nat'l Fire Ins. Co. v. B & L Trucking & Constr. Co.*, 134 Wn.2d 413, 427–28, 951 P.2d 250 (1998)). Certainly claim-application and underwriting materials contemporaneous to the formation of the contract at the heart of the instant dispute are reasonably considered relevant and "applicable" pieces of extrinsic evidence here.

The Court thus finds that Plaintiff has met its burden to establish that these requests are relevant. Defendant has not met its "heavy" burden of demonstrating why it should be denied. *See Blankenship*, 519 F.2d at 429. Defendant has not provided specific details that might substantiate its accusation that Plaintiff's sole motivation here is to cause annoyance, harassment, and undue expense.

Therefore, the Court OVERRULES Defendant's objections here and GRANTS Plaintiff's motion to compel with respect to Request for Production Nos. 2 and 4. The Court ORDERS

1   Defendant to produce documents responsive to Request for Production Nos. 2 and 4, consistent

2   with Plaintiff's instructions and definitions. *See* Dkt. No. 25-13 at 1–6, 9.

3          **2.**      **Request for Production No. 7**

4          Request for Production No. 7 seeks "[a]ll documents reflecting any and all reserves set

5   for the Claim." Dkt. No. 25-13 at 9. For the purposes of this case, an insurance claim reserve is

6   "an amount estimated to be sufficient to cover all unpaid losses, claims, and allocated loss

7   adjustment expenses . . . for which the . . . insurer may be liable." RCW 48.29.120(1); *cf. Phillips*

8   *v. USAA Cas. Ins. Co.*, No. C16-381, 2017 WL 3616420, at *1 (E.D. Wash. July 14, 2017)

9   (applying RCW 48.29.120(1) in district court).

10          Plaintiff "seeks reserve information . . . to determine the reasonableness of the insurer's

11   claims adjusting and whether [Defendant] low-balled or failed to pay out appropriate amounts of

12   undisputed coverage." Dkt. No. 25 at 8. Defendant lodges a host of objections to the request,

13   asserting that it is irrelevant, not reasonably calculated to lead to the discovery of admissible

14   evidence, overly broad, and unduly burdensome. Dkt. No. 30 at 12. Further, Defendant asserts

15   that the information sought is "proprietary and confidential," and that "release of [this]

16   information goes against public policy allowing insurance companies to maintain the financial

17   stability of their business." *Id.*

18          Courts have found that an insurer's reserve information is relevant and discoverable in a

19   bad-faith insurance claim. *See, e.g.*, *Phillips*, 2017 WL 3616420, at *1 (finding insurer's reserve

20   information relevant for determining whether insurer acted in bad faith); *Paul Johnson Drywall,*

21   *Inc. v. Phx. Ins. Co.*, No. C13-8124, 2014 WL 1764126, at *2–3 (D. Ariz. May 5, 2014) (finding

22   reserve information discoverable); *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1107–

23   08 (N.D. Cal. 2006) (finding reserve information relevant when assessing insurer's motivations

24   regarding handling of claim).

1    Plaintiff and Defendant here both cite *Miller v. Kenny*, 180 Wn. App. 772, 325 P.3d 278

2    (2014), in support of their positions regarding the relevance of reserve information. *See* Dkt. No.

3    25 at 8, Dkt. No. 30 at 12–13. And indeed, the opinion from the Washington Court of Appeals

4    includes language that could plausibly support either party in the dispute presently before the

5    Court. But the Court here finds Plaintiff's use of *Miller* more persuasive than Defendant's.

6    Plaintiff relies on *Miller* for the specific assertion that "reserves may be relevant and admissible

7    in a case where the issue is whether the insurance company fulfilled its duty to adjust the

8    insured's claim in good faith." *Miller*, 180 Wn. App. at 812. Defendant relies on *Miller*'s

9    assertion of a "general policy" that "it is preferable that loss reserves not be admitted into

10   evidence." *Id.* at 812–13. First, Plaintiff's citation refers to relevance—the issue before the Court

11   in a discovery dispute—while Defendant's citation refers to admissibility. *See* Fed. R. Civ. P.

12   26(b)(1). Second, under the *generalia specialibus non derogant* canon of construction—the

13   principle that the specific governs the general—it stands that *Miller*'s specific application of the

14   law in bad-faith insurance actions trumps its broader assertion of a general policy. *Cf. Perez-*

15   *Guzman v. Lynch*, 835 F.3d 1066, 1075 (9th Cir. 2016) (employing this canon of construction)

16   (citing Scalia & Garner, *Reading Law: The Interpretation of Texts* at 183 (2012)).

17   Thus, the caselaw here favors Plaintiff's position. Plaintiff "seeks reserve

18   information . . . to determine the reasonableness of the insurer's claims adjusting and whether

19   State Farm low-balled or failed to pay out appropriate amounts of undisputed coverage." Dkt.

20   No. 25 at 8. What is more, Defendant's argument here is largely based on unproved, conclusory

21   statements such as "[Defendant] adjusted accordingly as it received new information and abided

22   by the Policy." Dkt. No. 30 at 13. These assertions are the issues to be examined in this case—

23   not, as Defendant suggests, findings of fact to be cited as evidence for its position here. *See* Dkt.

24   No. 1-1 ¶¶ 50–54. As such, the Court is not convinced by Defendant's objections. Finally, an

appropriate protective order, *see infra* Section III.D, can address Defendants' concern about the "proprietary and confidential" nature of the information.

Therefore, the Court OVERRULES Defendant's objections and GRANTS Plaintiff's motion with respect to Request for Production No. 7. The Court ORDERS Defendant to produce documents responsive to Request for Production No. 7, consistent with Plaintiff's instructions and definitions. *See* Dkt. No. 25-13 at 1–6, 9.

**3.   Request for Production No. 10**

Request for Production No. 10, as amended, seeks:

> Copies of all documents reflecting the different bonus and/or incentive programs, regardless of the name or title used for such programs for Defendants' casualty (i.e., liability) versus property insurance, relating to homeowners policy claims handling departments for the years 2018 to 2023, including but not limited to: (a) The actual goals versus results in both departments for the last five years; and (b) Communications to employees in both departments regarding bonuses for the last five years.

Dkt. No. 25-13 at 10 (italics removed).

Plaintiff asserts here that "the requested documents are relevant because they go directly to a claims handler's motivations." Dkt. No. 25 at 9. Defendant objects, asserting that "documents related to bonus/incentive programs . . . are in no way tied to how [Defendant] handles claims, including this one." Dkt. No. 30 at 14. The request is, according to Defendant, "the proverbial fishing expedition." *Id.*

 "[I]ncentive programs, bonus structures, and other similar information could help Plaintiff determine whether Defendant encourages its employees to undervalue claims and thereby compel litigation to recover actual amounts due." *Hover v. State Farm Mut. Auto. Ins. Co.*, No. C13-05113, 2014 WL 4239655, at *4 (E.D. Wash. Aug. 26, 2014). "Plaintiff may inquire about bonus structures or other similar incentives for the employees who handled

Plaintiff's claim." *Vandevert*, 2022 WL 18781103, at *8; *see also Nielsen v. Cal. Cap. Ins. Co.*, No. C22-177, 2023 WL 11091242, at *7 (E.D. Wash. Sept. 29, 2023) (granting motion to compel insurer's production of "bonus information," as such "evidence appears relevant to Plaintiff's bad faith claims"); *Gould v. Allstate Vehicle & Prop. Ins. Co.*, No. C22-820, 2023 WL 3018865, at *10 (W.D. Wash. Apr. 20, 2023) (ordering production of "documents regarding bonuses, compensation, or other incentives given or paid to claim representatives, claim managers, or their supervisors or for which claims-handlers and their supervisors are eligible"). Defendant does not cite any cases to support its conclusion that this request is a fishing expedition. Instead, Defendant sketches a cursory description of its "salary and bonus programs" and rests on the conclusory assertion that these programs "are not tied in any way to whether claim payments are made or denied, the amount of benefits that are paid or denied, or anything that could incentivize a claim handler to not pay any and all claim benefits that are owed under the policy." Dkt. No. 30 at 14. Defendant's unsubstantiated word here is not sufficient to meet its heavy burden for showing why discovery should be denied.

Therefore, the Court OVERRULES Defendant's objections and GRANTS Plaintiff's motion with respect to Request for Production No. 10, as amended. The Court ORDERS Defendant to produce documents responsive to Request for Production No. 10, as amended, consistent with Plaintiff's instructions and definitions. *See* Dkt. No. 25-13 at 1–6, 10.

**4.      Request for Production No. 1 (from Plaintiff's Second Request for Discovery)**

Request for Production No. 1 seeks "all documents, communications, records directives, memorandums, training manuals, and policies relating in any way to 'hard living.'" Dkt. No. 25-10 at 8. Plaintiff asserts that the request is relevant, because Defendant used the term "hard living" as basis for denying Plaintiff's claim. *See* Dkt. No. 25 at 11; *see also* Dkt. No. 11-1 at 1. In its response, Defendant asserts that "no documents related to 'hard living' exist." Dkt. No. 30

at 14. Plaintiff, however, expresses disbelief at Defendant's assertion. *See* Dkt. No. 25 at 11. "Plaintiff is aware of *cases* in other states which reference a denial of coverage based on 'hard living.'" *Id.* (emphasis added). "It is difficult to believe," Plaintiff argues, "that there are no documents related to hard living when *multiple . . . claims adjusters* [for Defendant], in disparate jurisdictions, have used that exact phrase as a basis to deny coverage." *Id.* at 11–12 (emphasis added). Yet the support for this claim is the assertion that one of Plaintiff's counsel had *one* case in Arizona where "hard living" was cited. Dkt. No. 25-3 ¶ 4 ("I have represented *a* policy holder in *an* insurance bad faith case in Arizona in which a claims adjuster employed with State Farm cited "hard living" as their reason for denying coverage.") (emphasis added). But the Court cannot accept Plaintiff's tacit invitation that it credit the corollary to Plaintiff's assertion of disbelief—that is, that Defendant must be lying: Plaintiff's skepticism does not necessarily render Defendant's position untruthful, especially when based on a single counterexample.

As to Plaintiff's motion, "[t]he court cannot order defendant to produce documents that do not exist." *Gorton v. Todd*, No. CIVS08-3069, 2010 WL 234874, at *3 (E.D. Cal. Jan. 14, 2010). But nor can the Court respond to a discovery request on Defendant's behalf. The Court notes that while Defendant has asserted in its response to Plaintiff's motion that no responsive documents to this request exist (Dkt. No. 30 at 14–15), it did not so respond to the discovery request itself (*See* Dkt. No. 25-12 at 7). If it is Defendant's sworn position that no such documents exist, then it must provide a response attesting to that fact. *See, e.g.*, *Hinrichs v. Allstate Ins. Co.*, No. C21-80, 2021 WL 3053208, at *2 (W.D. Wash. July 20, 2021) (ordering party to "produce responsive documents" or, "in a properly executed response, attest that the documents do not exist").

Therefore, the Court GRANTS Plaintiff's motion with respect to Request for Production No. 1, consistent with Plaintiff's instructions and definitions. *See* Dkt. No. 25-10 at 1–6, 8.

1  **C.      Attorney Fees**

2        Plaintiff asserts that it made "numerous, sincere efforts to obtain discovery before

3  requesting judicial intervention" and "offered unreciprocated grace on several occasions." Dkt.

4  No. 25 at 15. Plaintiff believes that an award of attorney fees here is "fair" and "mandated by the

5  Federal Rules of Civil Procedure." *Id.* Defendant argues against an imposition of attorney fees,

6  asserting that it "timely provided Plaintiff with responses and documents and objected to certain

7  request[s] as is its right." Dkt. No. 30 at 15.

8        Pursuant to Federal Rule of Civil Procedure 37,

9              If the motion [to compel] is granted . . . the court must, after giving
               an opportunity to be heard, require the party . . . whose conduct
10             necessitated the motion, the party or attorney advising that
               conduct, or both to pay the movant's reasonable expenses incurred
11             in making the motion, including attorney's fees.

12  Fed. R. Civ. P. 37(a)(5)(A). If, however, the movant prematurely filed its motion to compel; the

13  opposing party's nondisclosure, response, or objection was substantially justified; or other

14  circumstances make an award of expenses unjust, attorney fees cannot be awarded. Fed. R. Civ.

15  P. 37(a)(5)(A)(i)–(iii). "An opposing party's failure to adequately respond to discovery is

16  substantially justified if there is a genuine dispute or if reasonable people could differ as to

17  whether the party must comply." *Kelly v. AAA Bowls Unlimited, Inc.*, No. C04-2214, 2005 WL

18  8172480, at *2 (W.D. Wash. Sept. 27, 2005) (citing *Pierce v. Underwood*, 487 U.S. 552, 565

19  (1988)).

20        Here, the Court has granted Plaintiff's motion to compel with respect to each request

21  under review. As to those circumstances enumerated in Rule 37(a)(5)(A) wherein the Court

22  cannot award attorney fees, the Court finds that none of them obtains here. First, the Court finds

23  that Plaintiff's motion was not premature—*i.e.*, that Plaintiff met and conferred with Defendant

24  in good faith prior to filing the motion to compel. *See* Dkt. No. 25 at 4.

1    Second, the Court finds that Defendant's objections and failure(s) to respond to

2  Plaintiff's requests were not substantially justified. To begin with, each time Defendant served

3  responses to Plaintiff's requests, it included more than two pages of "general objections." Dkt.

4  Nos. 25-7 at 2–5, 25-11 at 2–4, 25-12 at 2–5, 31-3 at 2–4. It is well established that general,

5  boilerplate objections are improper on their face. *See, e.g.*, *Weidenhamer v. Expedia, Inc.*, No.

6  C14-1239, 2015 WL 1292978, at *7 (W.D. Wash. Mar. 23, 2015) ("[Defendant's] 'General

7  Objections' . . . are a laundry list of objections devoid of any explanation of how each objection

8  applies to the request to which it is allegedly responsive . . . [and] give a person reading them no

9  basis to begin a discussion about whether [Defendant] has made a reasonable effort to identify

10  responsive information or documents."). Defendant points out in its response to Plaintiff's

11  motion to compel that "State Farm is well aware of the tenant [*sic*] that boilerplate objections are

12  disfavored" and declares that it does not assert boilerplate objections. Dkt. No. 30 at 10. But the

13  Court nevertheless finds most of Defendant's objections general and even outdated. For example,

14  General Objections 1 and 3 add nothing, simply stating what is required under laws and rules

15  that every lawyer is duty-bound to know and follow. Dkt. No. 25-7 at 2–3. General Objection 2,

16  with regard to requests that may seek attorney/work product, should be asserted if a request

17  actually seems to stray into a request for such material. Simply stating that an inadvertent

18  disclosure will not be deemed a waiver does not make it so—a court would need to decide if

19  there had been a waiver if that did, in fact, become an issue. *Id.* at 3. General Objections 5 and 6

20  discuss electronically stored information which, as of 2024, has long since been separately

21  discussed from non-electronic document discovery, and for which a separate model agreement is

22  provided by this District. *Id.* Further, Defendant's objection complains that identical copies could

23  be duplicative, *id.*, even though Plaintiff's definition of "document" specifies that she seeks only

24  "nonidentical copies." Dkt. No. 25-6 at 3.

1    What is more, Defendant's numerous assertions that Plaintiff's requests seek "irrelevant"

2    and "disproportionate" materials are simply unreasonable. *See, e.g.*, Dkt. No. 30 at 5–7. As the

3    Court has discussed in Sections III.A and III.B *supra*, courts in the Ninth Circuit have routinely

4    found relevant and discoverable every species of materials that Defendant either objected to or

5    refused to produce. And as to those requests where Plaintiff sought information related to "loss

6    of rents," it is not reasonable for Defendant to claim such material is irrelevant where Defendant

7    itself raised the subject in its letter to Plaintiff that first denied her coverage under her policy—

8    that is, in the single document perhaps most responsible for motivating Plaintiff to sue Defendant

9    in the first place. *See* Section III.A.4 *supra*; Dkt. No. 11-1 at 3. Moreover, Defendant's failure to

10   even contest more than half of the requests that it kept beyond Plaintiff's reach only

11   demonstrates the weakness of Defendant's positions on those requests.

12   Further, Defendant has not identified any "other circumstances" that might mitigate

13   against the Court's awarding Plaintiff attorney fees. Part of Defendant's objection to attorney

14   fees is based on its assertion in its response to Plaintiff's motion that it "has now cross-moved for

15   a protective order but also informed Plaintiff's counsel that the requested documents not yet

16   produced are ready and available." Dkt. No. 30 at 15. But as Plaintiff correctly points out in her

17   reply, Defendant's "cross-motion" is improper and contrary to this Court's local rules. *See* Dkt.

18   No. 40 at 4.

19   Additionally, as will be discussed in Section III.D *infra*, Defendant's motion for

20   protective order (Dkt. No. 41) fails to comport with this Court's local rules. Defendant's

21   responsive documents may indeed "lie[] in waiting for Plaintiff, pending the form of the

22   protective order," but the Court finds that if cooperatively responding to discovery were truly a

23   priority for Defendant, then Defendant might have ensured that the steps it took to obtain its self-

24   imposed necessary condition for doing so—*i.e.*, the entering of a protective order—were

1    performed sufficiently and properly, and in compliance with the applicable rules. *See* Dkt. No.

2    30 at 15. The Court notes that Defendant did not provide Plaintiff with its proposed protective

3    order until more than four months after being advised that Plaintiff was willing to enter the

4    Western District of Washington's model protective order. *Compare* Dkt. No. 25-8 at 1, 9–16,

5    *with* Dkt. No. 31-4 at 1. Perhaps most galling to the Court, *as early as February 5, 2024*,

6    Defendant in its first recitation of both its "General Responses" and "General Objections" to

7    Plaintiff's first requests for discovery announced its intention of withholding discovery "without

8    the prior entry of an appropriate protective order." Dkt. No. 25-7 at 1, 3. It thus appears to the

9    Court that for a substantial part of 2024, when faced with the option of either proactively moving

10   for a protective order or stonewalling on discovery, Defendant chose the latter, a decision that

11   has led to unnecessary delay and dispute. *See, e.g.*, Dkt. No. 42 ("Order Setting New Jury Trial

12   Date and Amended Related Dates"). It is not clear why Plaintiff did not simultaneously move for

13   a protective order when it filed its motion to compel, but the record tends to indicate substantial

14   foot-dragging on Defendant's part anyway.

15          Finally, in Defendant's reply brief, Defendant asserts that its motion for a protective

16   order regarding Plaintiff's requests for certain information that *Plaintiff requested in her motion*

17   *to compel* should be granted on the basis that Plaintiff did not respond to this argument in

18   opposing Defendant's motion. Dkt. No. 45 at 5. The Court finds this argument frivolous and a

19   waste of the Parties' and the Court's time, especially given the fact that Defendant's motion was

20   filed after the issue already had been fully briefed and noted in Plaintiff's motion.

21          In sum, as discussed above, the Court here has "rejected virtually all arguments raised by

22   Defendant[]" in response to her motion to compel, and "granted Plaintiff virtually all relief [she]

23   [has] sought." *Ball v. Manalto, Inc.*, No. C16-1523, 2017 WL 2378923, at *1 (W.D. Wash. June

24   1, 2017). Moreover, "Plaintiff's requested records could easily contain information relevant to

1   the claims and defenses at issue in this case." *Id.* Accordingly, the Court finds it appropriate to

2   award Plaintiff attorney fees under Rule 37.

3   **D.      Motion for Protective Order**

4          Per the Parties' submissions, the Court understands that neither is opposed to the Court's

5   entering a protective order. *See* Dkt. No. 41 at 9; Dkt. No. 40 at 3. Rather, the friction arises over

6   the potential content of the protective order. Plaintiff prefers the Western District of

7   Washington's Model Protective Order (*see* Dkt. No. 40 at 3), while Defendant has prepared its

8   own protective order, purportedly derived from the Western District's model (*see* Dkt. No. 31-4).

9   It appears that the Parties have been fruitlessly debating the merits of their respective orders

10  since at least as early as April 2024, when they held their first telephonic conference on

11  discovery. *See* Dkt. No. 25-9 at 1.

12         Under Local Civil Rule 26(b)(2), "the court may enter a proposed stipulated protective

13  order as an order of the court if it adequately and specifically describes the justification for such

14  an order. . . . Parties that wish to depart from the model order must provide the court with a

15  redlined version identifying departures from the model." LCR 26(b)(2). Here, the Court finds

16  that Defendant's motion (Dkt. No. 41) is deficient.[2]

17         Defendant's motion does not adequately and specifically describe the justification for the

18  protective order. *Cf.* LCR 26(b)(2). Defendant asserts that it "simply seeks to have this Court

19  enter the same Protective Order it has entered in other case[s], and which Plaintiff's counsel has

20  also stipulated to in the past but now inexplicably objects to." Dkt. No. 41 at 9. In support of this

21

22  _____

23  [2] As an initial matter, the Court notes that Document Number 31-4, as filed by Defendant, comprises some 34 pages
    and includes within its pages a diverse collection of written material, including: (1) portions of an email
    conversation between Plaintiff and Defendant, most of it discussing case scheduling; and (2) the aforementioned

24  highlighted version of the protective order (which, moreover, misidentifies on the proposed order page the presiding
    judge in the instant case). *See generally* Dkt. No. 31-4.

assertion, Defendant cites 10 cases where this Court purportedly adopted Defendant's preferred protective order. *Id.* at 11. But these cases are not apposite, for one crucial reason: In all 10 cases, *both* parties stipulated to Defendant's version of the protective order. *Wright v. State Farm Fire & Cas. Co.*, No. C23-179, Dkt. No. 47 at 1 (W.D. Wash. June 17, 2024); *Culp v. State Farm Fire & Cas. Co.*, No. C23-5082, Dkt. No. 14 at 1 (W.D. Wash. Nov. 3, 2023); *Lin v. State Farm Fire & Cas. Co.*, No. C23-5099, Dkt. No. 19 at 1 (W.D. Wash. Aug. 9, 2023); *Gudmundson v. State Farm Fire & Cas. Co.*, No. C22-352, Dkt. No. 39 at 1 (W.D. Wash. Dec. 28, 2022); *Kaufman v. State Farm Fire & Cas. Co.*, No. C22-539, Dkt. No. 24 at 1 (W.D. Wash. Jan. 11, 2023); *Spurlock v. State Farm Fire & Cas. Co.*, No. C23-467, Dkt. No. 42 at 1 (W.D. Wash. Dec. 12, 2023); *Trakarn v. State Farm Mut. Auto. Ins. Co.*, No. C23-929, Dkt. No. 19 at 1 (W.D. Wash. Nov. 27, 2023); *Janzen v. State Farm Fire & Cas. Co.*, No. C23-1517, Dkt. No. 19 at 1 (W.D. Wash. Mar. 15, 2024); *O'Neal v. State Farm Fire & Cas. Co.*, No. C23-232, Dkt. No. 60 at 1 (W.D. Wash. Mar. 1, 2024); *McGraw v. State Farm Fire & Cas. Co.*, No. C24-5072, Dkt. No. 19 at 1 (W.D. Wash. Aug. 6, 2024). Such is not the case here, where Plaintiff argues that Defendant's deviations from the model protective order are, among other things, unsubstantiated and unnecessary. Dkt. No. 40 at 3. And as to the fact that Plaintiff's counsel once agreed to Defendant's protective order in another case, that is irrelevant and of no consequence here; this is a different matter altogether.

Further, Defendant asserts that its additions to the model order "simply conform the USDC-approved order to the unique requirements of insurance-related discovery involving proprietary discovery." Dkt. No. 41 at 9–10. But Defendant does not identify what these "unique requirements might be"—or, indeed, how they are unique, and why they are required.

Despite these deficiencies, given the panoply of materials before it, the Court finds that it is possible to construct a viable protective order here, especially in light of the fact that both

Parties have unequivocally expressed their desire for one. First, Defendant's reply brief (Dkt. No. 45) fills in the blanks that the Court found in Defendant's original motion (Dkt. No. 41). Defendant explains more concretely and specifically its interest in "steadfastly protect[ing] its proprietary and confidential information." Dkt. No. 45 at 3. And when the reply is examined together with the highlighted modified protective order (Dkt. No. 31-4), Defendant's manifest intention regarding the specific documents it seeks to protect, "including claims training and procedure manuals, sensitive personal information, [and] proprietary contracts with third parties," is reasonably clear. *See* Dkt. No. 45 at 4.

As to the purported "proposed modification of the Model" (Dkt. No. 31-4), the Court GRANTS IN PART and DENIES IN PART Defendant's motion as follows:

- The Court will allow the insertion on Page 1, Section 1 ("Purposes and Limitations."

- The Court will allow the insertion on Page 2, Subsections 2.1 through 2.5; or to the last paragraph of Section 2.

- The Court does not approve of the insertion on Page 3, Subsection 3.1, beginning with "The parties reserve their right to file proper motions," and running through the end of Subsection 3.1. Such language here is not specific to insurance-related litigation, and the proposed language neither meaningfully augments nor restrains the rights and obligations that the Parties already have.

- The Court will allow the insertion on Page 3, Subsection 3.2.

- The Court will allow the insertions on Page 4, Paragraph 4.2(d).

- The Court will allow the insertion on Page 5, Section 5.1, first paragraph—*i.e.*, the word "Order."

- The Court does not approve of the insertion on Page 5, Section 5.1, second paragraph—*i.e.*, the word "may." The addition of possibility here adds nothing to the language concerning a party's exposure to sanctions.

- The Court will allow the insertion on Page 6, Subsection 5.2—*i.e.*, the word "Order."

- The Court will allow the insertion on Page 6, Paragraph 5.2(c)—*i.e.*, "SUBJECT TO PROTECTIVE ORDER."

- The Court will allow the insertion on Page 8, Section 7—*i.e.*, "SUBJECT TO PROTECTIVE ORDER."

- The Court will allow the insertions on Page 8, Paragraph 7(b)—*i.e.*, the two insertions of the word "Order."

- The Court does not approve of the insertion on Page 8, Subsection 8.2. It goes without saying that breaching *any* court order exposes a party to potential sanctions.

- The Court will allow the insertions on Page 9, Subsection 10.1.

- The Court does not approve of the insertion on Page 9, Subsection 10.2, regarding a seven-year limit on either party's retention of documents. The Court notes that Defendant did not highlight or otherwise call the Court's attention to this insertion, *see* Dkt. No. 31-4 at 31, but it will give Defendant the benefit of the doubt and assume that Defendant's omission here was merely an oversight.

//

//

//

1

### IV.   CONCLUSION

2          For the reasons explained above, the Court hereby ORDERS:

3          (1)     Plaintiff's Motion to Compel (Dkt. No. 25) is GRANTED in its entirety.
                   Defendant is ORDERED to provide responses to Request of Production Nos.
4                  2, 4, 5 (as amended), 6, 7, 9, 10 (as amended), and 11 (as amended), from
                   Plaintiff's first requests for discovery; and to Interrogatory No. 1 and
5                  Request for Production Nos. 1 and 3, from Plaintiff's second requests for
                   discovery.
6

7          (2)     Plaintiff is AWARDED attorney fees associated with its motion.

8                  (a)     Plaintiff SHALL file an accounting of the attorney fees requested
                           **within fourteen (14) days** of this Order.
9
                   (b)     Defendants SHALL have **seven (7) days** to file any objections to the
10                         accounting.

11                 (c)     If Defendants have no objections to the accounting, they SHALL
                           pay Plaintiff the requested amount **within twenty-eight (28) days**
12                         of this Order and file a certification that the amount has been paid.

13         (3)     Defendant's Motion for Protective Order (Dkt. No. 41) is GRANTED IN
                   PART AND DENIED IN PART. Defendant SHALL file a proposed stipulated
14                 protective order consistent with this Order within **five (5) days** of this
                   Order.
15

16   Dated this 15th day of October 2024.

17

18                                          _____
                                            Tana Lin
19                                          United States District Judge

20

21

22

23

24